PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES D. COPELAND | ) | |
| | ) | CASE NO. 5:12CV0541 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| PATRIC R. DONAHUE,[1] *et al.*, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | [Resolving ECF No. 2] |

*Pro se*[2] Plaintiff Charles D. Copeland filed this action against Postmaster General Patrick

R. Donahoe, "Chairman/Member Board of Governors" Thurgood Marshall, Jr.,[3] Vice President,

Labor Relations Douglas A. Tulino, and Worker's Compensation Claims Examiner Stacy

Thurman.  In the Complaint (ECF No. 1), Plaintiff alleges he was required to return a disability

check and was required to return to work.  He seeks monetary relief.

Plaintiff also filed an Application to Proceed Without Prepayment of Fees (ECF No. 2).

---

[1]  Although Plaintiff lists the Defendant's name as Patric R. Donahue, Patrick R. Donahoe is Postmaster General and Chief Executive Officer of the United States.  *See* http://about.usps.com/who-we-are/leadership/pmg-exec-comm.htm#p=1

[2]  Plaintiff lists Alan J. Shapiro as his attorney (ECF No. 1 at 1); however, the Complaint (ECF No. 1) is clearly prepared *pro se*, and is signed only by Plaintiff.  There is no indication on the pleading or in any other filing that Plaintiff is represented by counsel in this action.

[3]  Mickey D. Barnett is the current chairman of the Board of Governors.  *See* http://about.usps.com/who-we-are/leadership/board-governors-bios.htm#p=1

(5:12CV0541)

## I. Background

Plaintiff's Complaint (ECF No. 1) is a series of disjointed statements and allegations

without reference to many relevant dates.  He claims he has worked for the post office since

1976.  ECF No. 1 at 3.  Plaintiff received a notice, dated February 16, 2010, informing him that

"as a result of a scheduling and staffing review in [his] section [he had] been identified as excess

to the needs of the section."  ECF No. 3-5 at 1.  He was told he would be an "unassigned regular"

and could choose from a list of temporary assignments.  ECF No. 3-5 at 1.  Plaintiff was further

informed that he was welcome to bid on other permanent assignments and could bid on a job in

his current section, if an opening occurred at his salary level.  ECF No. 3-5 at 1.

Shortly after receiving that notice, Plaintiff broke his ankle on February 23, 2010.

Plaintiff applied for and was granted workers' compensation benefits beginning in August 2010.

ECF No. 3-8 at 1.  The Office of Workers' Compensation Programs ("OWCP") defined his

benefits and cautioned him to notify the OWCP immediately when he went back to work in order

to avoid an overpayment of benefits.  ECF No. 3-9 at 2.  He was told that if he worked any part

of a period for which he received a benefit check, he should return the check to the OWCP.  ECF

No. 3-9 at 2.

Plaintiff was cleared to return to work on November 18, 2010.  ECF No. 3-4 at 1.  The

only restriction noted by Plaintiff's physician was a limitation on the amount of walking up and

down stairs.  ECF No. 3-4 at 3.  He returned to work on December 5, 2010; however, he did not

notify the OWCP of his change in employment status.  ECF No. 3-3 at 1.  As a result, Plaintiff

was paid wages by his employer and also collected compensation for lost wages through the

(5:12CV0541)

OWCP until January 4, 2011.  ECF No. 3-3 at 1.  When the OWCP discovered Plaintiff had

returned to work, the Office assessed Plaintiff $3,023.61 for the overpayment of benefits and

demanded repayment.  ECF No. 3-3 at 1.

Plaintiff claims he was required to "bid on jobs that were in violation of [his] restrictions"

and was the subject of disciplinary actions "for delay of mail because [he] could not get it out

fast, and . . . because I worked overtime trying to get the job done."  ECF No. 1 at 3.  Plaintiff

received a Notice of Removal (ECF No. 3-7), dated February 16, 2011, which listed several

complaints with regard to Plaintiff's job performance.  The Notice stated that on January 15,

2011, Plaintiff dispatched nine pieces of Express Mail to the incorrect post office.  Another

driver was sent to retrieve the mail for proper processing, which required extra trips to expedite

delivery.  ECF No. 3-7 at 1.

On January 18, 2011 there were four late dispatches from Registry at Plaintiff's facility.

ECF No. 3-7 at 1.  The next morning, a supervisor at the Stow Post Office stated that they did not

receive a Registry pouch.  ECF No. 3-7 at 1.  It was also reported that the truck driver stated that

he left the pouch on the mail dock at Plaintiff's facility because it did not have the necessary

paperwork.  ECF No. 3-7 at 1.  The Supervisor of Transportation Operations drove out to

Plaintiff's facility to retrieve the pouch from the dock.  At that time, she also found a pouch for

the Hiram Post Office without the necessary paperwork that had been left at the dock.  ECF No.

3-7 at 1.

On the evening of January 23, 2011, Plaintiff was working in the Registry cage.  ECF No.

3-7 at 2.  Plaintiff's supervisor indicated that he asked Plaintiff how things were going and was

3

(5:12CV0541)

told by Plaintiff he was ahead of schedule.  ECF No. 3-7 at 2.  The following day, approximately

68 pieces of Express Mail were discovered hidden in a bassinet cart in the rear of the Registry

cage.  ECF No. 3-7 at 2.  Upon reporting to work that day, Plaintiff was told to go to his duty

station and a union steward would be sent to speak with him before the supervisor spoke to him

as part of an investigation before a Pre-Disciplinary Interview ("PDI") would be conducted.  ECF

No. 3-7 at 2.  The supervisor described Plaintiff as upset when he left the room.  ECF No. 3-7 at

2.  Approximately fifteen minutes later, Plaintiff returned to see the supervisor, still upset, and

informed his supervisor he was going home and would not be returning until he had a "bid" job.

ECF No. 3-7 at 2.  Plaintiff also announced he was going to see his doctor and asked for a "CA-

2" form to give to the doctor.  ECF No. 3-7 at 2.  The supervisor told Plaintiff he could conduct

the PDI over the telephone with Plaintiff's union steward on the line, and Plaintiff indicated that

would be fine.  ECF No. 3-7 at 2.

On January 26, 2011, Plaintiff failed to appear in person for the PDI, so the supervisor

attempted to reach Plaintiff by telephone.  But, the telephone number Plaintiff had previously

provided to his employer as a "good number to reach [him]" was not in working order.

Thereafter, the union steward asked a co-worker to call Plaintiff and ask him to call into the

office.  Although Plaintiff was contacted, he refused to call into the office.  ECF No. 3-7 at 3.

Plaintiff's termination was effective March 19, 2011.  He made a request for leave under the

Family and Medical Leave Act, but his request was denied on May 31, 2011.  ECF No. 3-13 at 1.

Plaintiff alleges he retired.

4

(5:12CV0541)

Plaintiff claims he went home sick on January 24, 2011 because he was upset and "stressed out." ECF No. 3 at 3.  He states, "[a] CA-2 form was given to me and I went to the doctor because of the stress. . . ." ECF No. 3 at 3.  Plaintiff contends, "not only the action of trying to call me on the phone to try to discipline me when [the supervisor] KNEW I WENT OUT ON STRESS, that[']s what the CA-2 was all about stress and even in his commen[t] he showed and acknowledged I was upset. . . ." ECF No. 3 at 4.  He alleges the Post Office knew he "was out on injury due to their refusal to honor my medical restrictions and intentionally caused such harm and stress." ECF No. 1 at 4.  Plaintiff claims he was terminated because he broke his leg and it caused a delay in the mail.  He indicates he was also disciplined "because I REFUSED to be a party to phone harassment which is a CRIME[.]  [The supervisor] knew [he] was ill.  [He] gave me a [CA-2] form which is [a] stress claim[.]  [He] knew I was visibly distressed and [he] wasn[']t calling me to see how I was doing, no [he] called and had someone else call to cause more harm. . . ." ECF No. 3 at 5.

Plaintiff asserts claims for slander, defamation, "fraudulent claims dealing with injuries," and "criminal claims under Ohio Revised Code § 2739.01."  He seeks compensatory damages for loss of future earnings, pain, suffering, and inconvenience in the amount of $530,000.  He requests an award of $400,000 on his defamation claim and demands criminal penalties be imposed for tampering with medical records.  He seeks an additional $400,000 for "intentional emotional harm" and reinstatement of his monthly workers' compensation payments. ECF No. 1 at 5.

(5:12CV0541)

## II.  Standard for Dismissal

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted or if it lacks an arguable basis in law or fact.[4]  *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996).  A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless.  *Neitzke*, 490 U.S. at 327.

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in th[e] complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 564 (2007).  A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal* , 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Twombly*, 550 U.S. at 555.  Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."

---

[4]  A claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute.  *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997) (overruled on other grounds by *Jones v. Bock*, 549 U.S. 199 (2007); *Harris v. Johnson*, 784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

(5:12CV0541)

*Iqbal*, 556 U.S. at 678.  A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard.  *Id.*  In reviewing a complaint, the Court must construe the pleading in the light most favorable to the plaintiff.  *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

### III.  Law and Analysis

#### A.  Tort Claims Against the United States

While Plaintiff asserts tort claims for slander and defamation, he does not allege any actions, tortious or otherwise, taken by the individuals he names as Defendants in the Complaint (ECF No. 1).  He brings his tort claims against the Postmaster General, the "Chairman/Member Board of Governors" and the Vice President, Labor Relations of the United States Postal Service ("USPS"), and a Worker's Compensation Claims Examiner.  None of the allegations in the Complaint (ECF No. 1), any of the attachments thereto, or supplement to the pleading (ECF No. 3) mention these individuals.  The conduct described in the pleading was committed by other federal postal employees.  It appears, therefore, that the claims against these defendants are, in fact, claims against the USPS and the United States Office of Worker's Compensation.

The United States, as a sovereign, is immune from suit unless it explicitly waives its immunity.  *United States v. Sherwood*, 312 U.S. 584, 590-91 (1941).  By enacting the Federal Tort Claims Act ("FTCA"), Congress waived the United States' sovereign immunity under very limited circumstances for claims against the federal government arising from torts committed by federal employees who are acting within the scope of their employment.  28 U.S.C. §§ 1346(b)(1), 2679(d)(1); *United States v. Orleans*, 425 U.S. 807, 810 (1976).  Congress defined

7

(5:12CV0541)

the exact terms and conditions upon which the government may be sued and the terms of the United States' consent define the parameters of federal court jurisdiction to entertain suits brought against the United States. *Orleans*, 425 U.S. at 814; *Honda v. Clark*, 386 U.S. 484, 501 (1967).

The parameters placed on these tort claims dictate that they must be presented in writing to the appropriate Federal agency prior to bringing suit in federal court. 28 U.S.C. § 2401(b). The timely filing of an administrative claim is a requirement of the FTCA. If the administrative requirements of the FTCA have not been fulfilled, the case must be dismissed for lack of jurisdiction. *Dolan v. United States*, 514 F.3d 587, 593 (6th Cir. 2008). This Court cannot extend the waiver of immunity beyond what Congress intended. *United States v. Kubrick*, 444 U.S. 111, 118 (1979). Because § 2401(b) is a condition of the United States' waiver of immunity, it must be interpreted solely by reference to federal law. There is no indication in the case at bar that Plaintiff presented these tort claims to the appropriate federal agency.

Moreover, even if he had exhausted his administrative remedies, he could not bring a claim for slander under the FTCA. The statute specifically exempts from suit claims "arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h).

### B. Tort Claims Against Individual Defendants

To the extent Plaintiff intended to bring claims against Defendants to hold them individually and personally liable, he fails to state a claim upon which relief may be granted. First, the Westfall Act immunizes federal employees from liability for torts they commit when

8

(5:12CV0541)

acting within the scope of their federal employment.  28 U.S.C. § 2679(b)(1).  When a federal

employee acts within the scope of her employment and commits a tort, any relief for that tort

must be sought against the Government under the FTCA.  *Rector v. United States*, 243

Fed.Appx. 976, 978 (6th Cir. 2007).  The Westfall Act immunizes government employees from

suit even when an FTCA exception precludes recovery against the United States.  *United States*

*v. Smith*, 499 U.S. 160, 166 (1991).

      Whether a federal employee acts within the scope of her employment is determined by

applying the law of the state in which the alleged tort took place.  *Singleton v. United States*, 277

F.3d 864, 870 (6th Cir. 2002); *Kinsey v. Kinsey*, 98 F.Supp.2d 834, 836 (N.D. Ohio 2000).

Under Ohio law, an employee acts within the scope of employment if her conduct (1) is of the

kind which she is employed to perform; (2) occurs substantially within the authorized limits of

time and space; and (3) is motivated, at least in part, by a purpose to serve the employer.  *Allstate*

*Ins. Co. v. Quick*, 107 F.Supp.2d 900, 905 (S.D. Ohio 1999) (citing *Anderson v. Toeppe*, 116

Ohio App.3d 429, 436 (1996)).  "[A]n employee acts within the scope of employment if the

employee acts within his authority during the course of employment even though acting

intentionally or maliciously."  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125,

1143 (6th Cir. 1996).

      In the case at bar, there are no allegations suggesting these defendants performed any

actions which could be considered to be tortious.  "Defamation is a false publication that injures

a person's reputation, exposes him to public hatred, contempt, ridicule, shame or disgrace, or

affects him adversely in his trade or business."  *Sweitzer v. Outlet Communications, Inc.*, 133

9

(5:12CV0541)

Ohio App.3d 102, 108 (1999).  Under Ohio law, the elements needed to make out a defamation

claim are:  "(1) a false and defamatory statement concerning another; (2) an unprivileged

publication to a third party; (3) fault amounting at least to negligence on the part of the publisher;

and (4) either actionability of the statement irrespective of special harm or the existence of

special harm caused by the publication."  *Fitzgerald v. Roadway Express, Inc.*, 262 F.Supp.2d

849 (N.D. Ohio 2003) (citing *Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Servs., Inc.*, 81

Ohio App.3d 591, 601 (1992)). Written defamation is known as libel; spoken defamation is

known as slander.  *Mawaldi v. St. Elizabeth Health Center*, 381 F.Supp.2d 675, 688 (N.D. Ohio

2005).  There is no indication in the Complaint (ECF No. 1) that any of the Individual

Defendants made false statements concerning Plaintiff, published those statements to a third

party, or in any way injured Plaintiff's reputation.

## C.  **Criminal Charges**

Plaintiff's attempt to bring criminal charges against Defendants is denied.  Criminal

actions in the federal courts are initiated by the United States Attorney.  28 U.S.C. § 547; Fed. R.

Crim. P. 7(c).  They cannot be brought by the Court or by a *pro se* Plaintiff in a civil action.

## D.  **Termination of Worker's Compensation Benefits**

Plaintiff also asks the Court to reinstate his Worker's Compensation benefits.  His

compensation claim arises under the Federal Employees' Compensation Act ("FECA"), 5 U.S.C.

§ 8101 *et seq.*  FECA establishes a comprehensive scheme under which federal employees may

seek benefits for work-related accidents or death.  The Act vests plenary authority in the

Secretary of Labor and her authorized agents to "administer, and decide all questions arising

10

(5:12CV0541)

under [the Act]."[5] 5 U.S.C. § 8145.  *See Staacke v. United States Secretary of Labor*, 841 F.2d 278, 282 (9th Cir. 1988).  The Secretary may award or refuse to award compensation, and may, at her discretion, "end, decrease, or increase the compensation previously awarded." 5 U.S.C. § 8128(a)(1).  Consequently, the discretion accorded to the Secretary, to make and police choices associated with disability decisions "is virtually limitless." *Staacke*, 841 F.2d at 282 (citing *Rodrigues v. Donovan*, 769 F.2d 1344, 1348 (9th Cir. 1985)).

Moreover, FECA provides the exclusive remedy for federal employees who sustain work-related injuries.  5 U.S.C. § 8116.  Specifically, FECA provides, in relevant part:

> The action of the Secretary or his designee in allowing or denying a payment under this subchapter is-- **(1)** final and conclusive for all purposes and with respect to all questions of law and fact; and **(2)** not subject to review by another official of the United States or by a court by mandamus or otherwise.

5 U.S.C. § 8128(b).  The unmistakable language of § 8128(b) makes clear that administrative decisions to deny or terminate benefits under FECA are not subject to judicial review.  *Owens v. Brock*, 860 F.2d 1363 (6th Cir. 1988).  *See Czerkies v. United States Dep't of Labor*, 73 F.3d 1435, 1438 (7th Cir. 1996).  This Court does not have authority to overturn the decision of the OWCP.

---

[5]  This includes the authority to administer the payment of benefits, adjudicate claims, decide all questions arising under FECA, and promulgate the regulations necessary for the administration and enforcement of FECA.  5 U.S.C. §§ 8124(a), 8145.  Pursuant to § 8145, the Secretary has delegated this authority to the Director, OWCP, who is responsible for the administration and implementation of FECA.  20 C.F.R. § 10.1.

(5:12CV0541)

## E. Vexatious Litigation

The Court takes note that this is the fourteenth case Plaintiff filed which was dismissed on grounds that it was frivolous, malicious or failed to state a claim upon which relief could be granted.[6]  The Court is generally very tolerant of legal filings from *pro se* litigants.  Plaintiff, however, has established a pattern of filing complaints in this Court which are patently frivolous and vexatious, and which appear calculated to harass the defendants and abuse the judicial process.

Federal courts have both the inherent power and constitutional obligation to protect their jurisdiction from conduct which impairs the ability to carry out Article III functions.  *Procup v. Strickland*, 792 F.2d 1069, 1073 (11th Cir. 1986).  Moreover, the Court has the responsibility to prevent litigants from unnecessarily encroaching on judicial machinery needed by others.  *Id.*  To

---

[6]  In addition to this case, Plaintiff filed the following cases which were dismissed under either 28 U.S.C. § 1915(e), or were determined to be so attenuated or incomprehensible as to deprive the Court of subject matter jurisdiction:  *Copeland v. United States*, No. 5:12CV0650 (N.D. Ohio dismissed April 11, 2012)(Polster, J.); *Copeland v. City of Akron*, No. 5:12CV0365 (N.D. Ohio dismissed April 16, 2012)(Lioi, J.); *Copeland v. City of Akron*, No. 5:12CV0352 (N.D. Ohio dismissed April 19, 2012)(Pearson, J.); *Copeland v. Copeland*, No. 5:10CV2704 (N.D. Ohio dismissed Jan. 28, 2011)(Adams, J.); *Copeland v. Potter*, No. 5:09CV1730 (N.D. Ohio dismissed Dec. 31, 2009)(Adams, J.); *Copeland v. I.R.S.*, No. 5:08CV2768 (N.D. Ohio dismissed April 30, 2009)(Adams, J.); *Copeland v. City of Akron*, No. 5:07CV594 (N.D. Ohio dismissed April 10, 2007)(Gwin, J.); *Copeland v. Ohio Division of Motor Vehicles*, No. 5:07CV0067 (N.D. Ohio dismissed April 10, 2007)(Gwin, J.); *Copeland v. Ohio Division of Motor Vehicles*, No. 5:06CV1438 (N.D. Ohio dismissed Aug. 16, 2006)(Gwin, J.); *Copeland v. Akron Bd. of Educ.*, No. 5:04CV2206 (N.D. Ohio dismissed Nov. 19, 2004)(Adams, J.); *Copeland v. Ohio Division of Motor Vehicles*, No. 5:03CV0827 (N.D. Ohio dismissed June 10, 2003)(Gwin, J.); *City of Akron v. Copeland*, No. 5:03CV0599(N.D. Ohio dismissed April 14, 2003)(Gwin, J.)(Copeland attempted to remove his traffic ticket from state court); *Copeland v. Office of Workers' Compensation*, No. 5:98 CV0447 (N.D. Ohio dismissed April 6, 1998)(Gwin, J.).

(5:12CV0541)

achieve these ends, the United States Court of Appeals for the Sixth Circuit has approved

enjoining vexatious and harassing litigants by requiring them to obtain leave of court before

submitting additional filings.  *Filipas v. Lemons*, 835 F.2d 1145 (6th Cir. 1987); *Wrenn v.*

*Vanderbilt Univ. Hosp.*, Nos. 94-5453, 94-5593, 1995 WL 111480 (6th Cir. Mar. 15, 1995)

(authorizing a court to enjoin harassing litigation under its inherent authority and the All Writs

Act, 28 U.S.C. § 1651(a) (citations omitted)).  Plaintiff is cautioned that continued efforts to file

patently frivolous lawsuits may result in the Court declaring him to be a vexatious litigant, and

enjoining him from filing additional actions without leave of court.

## IV.  Conclusion

Accordingly, Plaintiff's Application to Proceed Without Prepayment of Fees (ECF No. 2)

is granted.

This action is dismissed pursuant to 28 U.S.C. § 1915(e).  The Court certifies, pursuant to

28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[7]


IT IS SO ORDERED.


  December 29, 2012                         /s/ Benita Y. Pearson
Date                                      Benita Y. Pearson
                                          United States District Judge

---

[7] 28 U.S.C. § 1915(a)(3) provides:

An appeal may not be taken in forma pauperis if the trial court certifies in
writing that it is not taken in good faith.

13